SUMMONS

STATE OF MINNESOTA

COUNTY OF BLUE EARTH

DISTRICT COURT

FIFTH JUDICIAL DISTRICT

| | |
|---|---|
| LILY POSS,<br><br>     *Plaintiff,*<br><br>v.<br><br>EAGLE LAKE FAMILY DENTISTRY, P.A., a Minnesota business corporation,<br><br>     *Defendant.* | Case No. _____<br><br>Case Type: <u>14 (Other Civil)</u><br><br><br>**SUMMONS** |

THIS SUMMONS IS DIRECTED TO <u>**EAGLE LAKE FAMILY DENTISTRY, P.A.**</u>

    **1.** **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    **2.** **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

        Paul R. Hansmeier (MN Bar #387795)
        CLASS JUSTICE PLLC
        100 South Fifth Street, Suite 1900
        Minneapolis, MN 55402

- 1 -

**EXHIBIT 1**

3.   **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.   **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5.   **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6.   **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

_____
Plaintiff's attorney's signature

_10/4/13_____
Dated

Paul R. Hansmeier (MN Bar # 387795)
CLASS JUSTICE PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
E-mail: mail@classjustice.org
Phone: (612) 234-5744

STATE OF MINNESOTA        DISTRICT COURT

COUNTY OF BLUE EARTH        FIFTH JUDICIAL DISTRICT

| | |
|---|---|
| LILY POSS,<br><br>    *Plaintiff,*<br><br>v.<br><br>EAGLE LAKE FAMILY DENTISTRY, P.A., a Minnesota business corporation,<br><br>    *Defendant.* | Case No. _____<br><br>Case Type: <u>14  (Other Civil)</u><br><br>**COMPLAINT**<br><br>**Injunctive Relief Sought** |

Plaintiff, Lily Poss, by and through the undersigned counsel, brings this action against Defendant Eagle Lake Family Dentistry, P.A., a Minnesota business corporation, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and for violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A (the "MHRA"), and alleges as follows:

## INTRODUCTION

1.     Defendant operates a website that is not accessible to persons who are visually impaired. Despite receiving multiple notices that its website was not accessible, Defendant has failed to take the simple, inexpensive, but necessary steps to ensure that its website is accessible to persons with disabilities. Due to Defendant's failure to take corrective action, Plaintiff is left with no choice but to seek relief

from this Court. Unless restrained from doing so, Defendant will continue to violate the law.

2.      Plaintiff is a person with a disability. She brings this civil rights action against Defendant for failing to provide full and equal access to the goods, services, facilities, privileges, advantages or other things offered by Defendant to its non-disabled customers. Specifically, the Internet website operated by Defendant, located at http://www.eaglelakedentistry.com, provides to the public a wide array of services, price discounts, service information and contact information. Yet, Defendant's website contains significant and pervasive access barriers that make it difficult if not impossible for users with visual impairments, like Plaintiff, to use. Defendant thus excludes the visually impaired from full and equal access to the opportunities, features, benefits, privileges and advantages provided by Defendant.

3.      Despite having been repeatedly notified of the existence of accessibility barriers on its website, Defendant has failed to remove or remedy such barriers preventing or limiting full and equal use of http://www.eaglelakedentistry.com by persons with disabilities like Plaintiff, notwithstanding that such modifications are readily achievable. Such barriers bar persons with visual impairments, like Plaintiff, from enjoying the opportunities and advantages provided by the website to others, increasing the sense of isolation and stigma that the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA") were meant to redress.

4.      The    failure    of    Defendant    to    provide    equal    access    to http://www.eaglelakedentistry.com to visually impaired users like Plaintiff violates the mandate of the ADA and the MHRA to provide "full and equal enjoyment" of a public accommodation's goods, services, facilities, privileges, and advantages. Rem-

- 2 -

edying such access barriers is critical to the statutory goal of the ADA and MHRA of providing people with disabilities the same access that others take for granted.

5.    Defendant's conduct constitutes an ongoing and continuous violation of the law. Defendant received advance notice that its website contained accessibility barriers through a letter sent on August 15, 2013, and a telephone call on August 29, 2013, prior to the initiation of the instant petition for relief. Despite these notices, Defendant has failed to take any prompt and equitable steps to remedy the discriminatory barriers contained on its website.

6.    Accordingly, Plaintiff seeks a declaration that Defendant's website—its features, its design, and its content, as presently constituted at the outset of this litigation—violates federal law, and an injunction requiring Defendant to make reasonable modifications to its website so that it is fully accessible to, and independently usable by, individuals with disabilities. Plaintiff further requests that, given Defendant's historical failure to comply with the mandate of the ADA and the MHRA, the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendant comes into compliance with the relevant accessibility requirements and to ensure that Defendant has adopted measures that will, in fact, cause it to remain in compliance with the law.

## JURISDICTION AND VENUE

7.    This is an action for declaratory and injunctive relief pursuant to Title III of the ADA, and for damages, civil penalties, and injunctive relief pursuant to the MHRA. This Court has concurrent jurisdiction over the federal cause of action, and has original jurisdiction over the state cause of action pursuant to Minn. Stat. 363A.33.

8.    Venue in this judicial district is proper because Defendant is located within this judicial district, because Defendant transacts business within this judi-

cial district, and because this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred. Defendant has sufficient contacts with this judicial district to be subject to personal jurisdiction.

## PARTIES

9.     Plaintiff, Lily Poss, is, and at all times relevant hereto was, a U.S. citizen and resident of the state of Minnesota. Plaintiff suffers from, and at all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2), and as defined by the MHRA, Minn. Stat. 363A.03, Subd. 12. Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq.*, and under the MHRA.

10.     Ms. Poss suffers from legal blindness. She was born with cataracts on her left eye. She had surgery to remove those cataracts at age five, but has never been able to see out of her left eye except to distinguish light from dark. She was diagnosed with glaucoma at age six, which can and has caused her significant pain. In June 2006, she lost the remainder of her sight. She can see nothing out of her right eye, and only can distinguish light from dark with her left eye. She primarily uses the screen-reading software "JAWS," or "Job Access With Speech," produced by Freedom Scientific, Inc., in order to access and view Internet webpages. She has also used the screen-reading software "Windows-eyes," produced by GW Micro, Inc. These software programs constitute the only way that she can access and view Internet webpages, or read any type of print whatsoever. Her condition is shared by as many as 10 million Americans who are blind or visually impaired, including 5.5 million seniors, and this figure is predicted to double over the next 30 years as the baby-boomer population ages. *See* Blindness and Low Vision Fact Sheet, National Federation of the Blind, http://nfb.org/fact-sheet-blindness-and-low-vision. As a per-

- 4 -

son with a disability, she has a personal interest in having full and equal access to publically-accessible Internet websites, and to the opportunities, features, benefits, privileges and advantages provided to the public on such websites.

11.     Separate and apart from her personal interest in having full and equal access to public Internet websites, Plaintiff also has served as a "tester," and in that capacity visits Internet websites in order to determine whether they are accessible by persons with visual impairments like herself. Testers have historically been used to uncover housing and employment discrimination, and act in the role of a private attorney general to enforce compliance. Plaintiff receives no remuneration for her activities as a "tester," which she undertakes for the public benefit of other individuals with disabilities and in order to ensure that entities are complying with legal accessibility requirements. Plaintiff's role as a "tester" provides her with a separate and   independent   motivation   to   return   and   attempt   to   access http://www.eaglelakedentistry.com again in the future, wholly apart from her personal interest in accessibility.

12.     Defendant Eagle Lake Family Dentistry, P.A. is a Minnesota business corporation with its principal place of business located in Eagle Lake, Minnesota. Defendant is the owner, lessee, lessor and/or operator of the real property and improvements commonly referred to as "Eagle Lake Family Dentistry" a place of public accommodation within the meaning of the ADA, located at 104 Plainview St., Eagle Lake, MN 56024. As also described above, Defendant is the owner, lessee, lessor and/or operator of the publicly-accessible Internet website located at http://www.eaglelakedentistry.com. Among other things, this website provides to the public a wide array of services, price discounts, service information and contact information.

13. Defendant received advance notice that its website, http://www.eaglelakedentistry.com, contained accessibility barriers through a letter sent via U.S. Mail, First Class, on August 15, 2013 and a telephone call on August 29, 2013, prior to the initiation of the instant petition for relief. Despite being on notice of the fact that its website contained accessibility barriers, Defendant has failed to make its website accessible. Because Defendant has failed to take any steps to remedy the discriminatory barriers contained on its website despite having been given multiple notices of such issues, the instant petition for relief is necessary.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

14. On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

    a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

    b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

    c. Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

    d. Individuals with disabilities continually encounter various forms of discrimination; and

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

15.   Congress explicitly stated that the purpose of the ADA was to:

a. Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c. Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

16.   Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

## FACTUAL BACKGROUND

17.   On or about September 2013, Plaintiff used her personal computer, and the screen-reading software program "JAWS," to access the Internet website http://www.eaglelakedentistry.com, for the purpose of taking advantage of the op-

- 7 -

portunities, features, benefits, privileges and advantages provided to the public through the website.

18.     Plaintiff was unable to fully and equally access the website http://www.eaglelakedentistry.com, and was therefore unable to fully utilize the website, due to Defendant's use of inaccessible web design features.

19.     Some persons with visual impairments, like Plaintiff, access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Such screen-reading software provides the only method by which blind persons can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the opportunities, information, products and services contained therein.

20.     The Internet has become a significant source of information, for conducting business and for doing everyday activities such as shopping, banking, etc., both for fully-sighted persons and for persons with visual impairments.

21.     However, significant barriers to access make it difficult for persons with disabilities to fully and equally access the Internet and the benefits it provides. A June 2013 study by the U.S. Department of Commerce found that a decrease in the amount of householders with a disability who reported no need to use the Internet "may point to a developing trend of increased home Internet use by persons with disabilities," but also found that only 48% of householders with a disability used the Internet at home, as opposed to 76% for those with no disability. U.S. Dept. of Commerce, Exploring the Digital Nation: America's Emerging Online Experience, at 26, 37 (June 7, 2013), *available at* http://www.ntia.doc.gov/files/ntia/publications/exploring_the_digital_nation_-_americas_emerging_online_experience.pdf.     This

large disparity, despite an increasing trend of use, points to a lack of accessible online content.

22.     There are well-established guidelines for making websites accessible to persons with visual impairments. These guidelines have been in place for at least several years and have been followed successfully by other business entities in making their websites accessible. The Web Accessibility Initiative ("WAI"), a project of the World Wide Web Consortium which is the leading standards organization of the Web, has developed guidelines for website accessibility, including the Web Content Accessibility Guidelines, version 2.0 ("WCAG 2.0"). The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to:

a.   Providing a minimum level of contrast for text (for example, a minimum contrast level of 4.5 to 1 for standard text) to ensure readability by persons with moderately low vision who do not use assistive technology;

b.   Using standard HTML text and not images of text, to ensure readability by users with low vision who use magnification and to ensure compatibility with screen-reading software;

c.   Providing text alternatives such as, for example, providing form labels to ensure the navigability and accessibility of fillable-text form fields (which, for example, might include search fields or fields to fill out personal information), and providing alternatives to "Captcha"-style visual challenge response tests used to determine whether users are human;

d. Using distinctions other than simply color to identify links;

e. Adding invisible alternative text ("alt-text") descriptions to graphics, which is invisible code embedded with a graphical image on a website that does not alter the visual presentation of the image but allows a screen reader to detect and vocalize the alt-text in order to describe the image that a sighted user would see;

f. Ensuring that all functions can be performed using a keyboard and not just a mouse (because manipulating a mouse is a visual activity of moving the mouse pointer from one visual spot on a page to another) and that no "keyboard traps" exist which prevent keyboard navigation;

g. Ensuring that image maps—a combination of multiple words and "hot spot" links into one single image which, when clicked on, allow the user to jump to many different destinations within the website—are accessible by adding alternative text ("alt-text") for the various hot spots; and

h. Ensuring that alternative forms of accessible navigation are available, such as a site map, a table of contents, or an effective search function, in order to aid users whose visual impairments or assistive technology prevents them from accessing the main site, and also ensuring that the website uses headings and a clear heading structure so that persons with visual impairments can easily navigate the site.

Without these very basic components, a website will be inaccessible to persons with visual impairments.

23. Plaintiff has attempted to, and has to the extent possible, accessed http://www.eaglelakedentistry.com, but could not do so on a full and equal basis be-

cause of her disability. As a result of Defendant's non-compliance with basic web accessibility standards such as the WCAG 2.0 as described above, Plaintiff, unlike persons without disabilities, is excluded from full and equal enjoyment of the opportunities, features, benefits, privileges and advantages provided to the public by http://www.eaglelakedentistry.com.

24.     Both in her personal capacity as an individual interested in having full and equal access to the Internet website http://www.eaglelakedentistry.com, and also in her capacity as a "tester," Plaintiff intends to access the website http://www.eaglelakedentistry.com again in the near future, both to attempt to enjoy the opportunities, features, benefits, privileges and advantages provided therein, and to ascertain whether the website remains inaccessible to persons with visual impairments. Because of the "always-on" nature of the Internet, Plaintiff can access http://www.eaglelakedentistry.com again at any time without significant burden or expense. Without a grant of the relief requested in this action, Plaintiff is therefore at risk of actual and imminent future injury.

## FACTUAL ALLEGATIONS

25.     Defendant's website, http://www.eaglelakedentistry.com, contains access barriers that prevent free and full use by persons with visual impairments, like Plaintiff. These barriers are pervasive and include, but are not limited to:

a. Images of text are used instead of standard text, making it difficult or impossible for persons with impaired vision to read, either with or without the aid of magnification or screen-reading software. For example, the website offers a "get acquainted offer" of $50 off any dental service for new patients, at http://www.eaglelakedentistry.com/special-offers-/, which is not visible to persons who use screen-reading software like Plaintiff;

     b.  The website uses visually-based, "Captcha"-style challenge response tests to determine if users are humans, making it difficult or impossible for persons with visual impairments to fully use certain features of the site; and

     c.  Important pictures on the website lack alternative text ("alt-text") descriptions, making it difficult or impossible for someone using screen-reading software to interpret the picture content.

26.    The above-listed barriers to access, and any further barriers to access not specifically listed here but present on http://www.eaglelakedentistry.com can be remedied without great difficulty or expense, and such remediation is therefore readily achievable by Defendant. Remediating such barriers to access would not fundamentally alter the nature of http://www.eaglelakedentistry.com, nor would it pose an undue burden to Defendant.

27.    Defendant's conduct constitutes an ongoing and continuous violation of the law. Defendant received advance notice that its website contained accessibility barriers through a letter sent on August 15, 2013, and a telephone call on August 29, 2013, prior to the initiation of the instant petition for relief. Despite multiple notices, Defendant failed to take steps to remedy the discriminatory barriers contained on its website. Unless restrained from doing so, Defendant will continue to violate the law.

28.    Without injunctive relief, Defendant's failure to remove accessibility barriers from its website, http://www.eaglelakedentistry.com, will continue to cause injury to Plaintiff and others like her, who will continue to be unable to access the website on a full and equal basis, and/or to enjoy the opportunities, features, benefits, privileges and advantages provided therein.

## FIRST CAUSE OF ACTION
### Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

29.    Plaintiff incorporates and realleges the above paragraphs.

30.    Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

31.    Title III of the ADA has been ruled as being applicable to websites, and is applicable to http://www.eaglelakedentistry.com, for at least one of the following reasons: (1) Places of public accommodation under the ADA are not confined to physical locations, and the Internet website http://www.eaglelakedentistry.com therefore constitutes a "place of public accommodation" under the meaning of the ADA; or (2) Defendant owns and/or operates a physical place of public accommodation at 104 Plainview St., Eagle Lake, MN 56024, and the Internet website http://www.eaglelakedentistry.com constitutes a service, privilege, advantage, or accommodation of such physical place of public accommodation.

32.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

33.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are

necessary to afford such goods, services, facilities, privi-
leges, advantages, or accommodations to individuals with
disabilities, unless the entity can demonstrate that mak-
ing such modifications would fundamentally alter the na-
ture of such goods, services, facilities, privileges,
advantages, or accommodations; and

[A] failure to take such steps as may be necessary to en-
sure that no individual with a disability is excluded, de-
nied services, segregated, or otherwise treated differently
than other individuals because of the absence of auxiliary
aids and services, unless the entity can demonstrate that
taking such steps would fundamentally alter the nature of
the good, service, facility, privilege, advantage, or accom-
modation being offered or would result in an undue bur-
den

34.    Defendant has discriminated against Plaintiff and others in that it has
failed to make http://www.eaglelakedentistry.com fully accessible to persons with
disabilities on a full and equal basis. The acts herein constitute violations of Title
III of the ADA, 42 U.S.C. § 12101 *et seq.*, and the regulations promulgated thereun-
der. Plaintiff has been denied full and equal access to the website, has not been pro-
vided services that are equal to the services provided to other users who do not have
disabilities, and/or has been provided services that are inferior to the services pro-
vided to other users who do not have disabilities.

35.    Defendant has failed to take any prompt and equitable steps to remedy
its discriminatory conduct, despite having been on notice of the fact that its website
contained accessibility barriers since at least August 15, 2013. These violations are
ongoing.

36.    Plaintiff specifically plans to access http://www.eaglelakedentistry.com
again in the immediate future, both in her personal capacity to attempt to enjoy the
website and its features, and in her capacity as a "tester." Plaintiff reasonably antic-
ipates that she will continue to suffer irreparable harm upon her planned future ac-
cess of http://www.eaglelakedentistry.com, unless and until Defendant is required

to remove the barriers to access that exist at its website, including those set forth specifically herein.

37.     This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff injunctive relief, including an order requiring Defendant to take all readily achievable steps to make its website readily accessible to and independently usable by individuals with disabilities to the extent required by law and/or to disable its website until such time as Defendant cures its access barriers.

38.     Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

## SECOND CAUSE OF ACTION
### Violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A

39.     Plaintiff incorporates and realleges the above paragraphs.

40.     Minn. Stat. 363A.11 provides:

> It is an unfair discriminatory practice:
>
> (1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of [...] disability [...]; or
>
> (2) for a place of public accommodation not to make reasonable accommodation to the known physical, sensory, or mental disability of a disabled person.

41.     The MHRA is applicable to http://www.eaglelakedentistry.com for at least one of the following reasons: (1) Places of public accommodation under the MHRA are not confined to physical locations, and the Internet website http://www.eaglelakedentistry.com therefore constitutes a "place of public accom-

- 15 -

modation" under the meaning of the MHRA; or (2) Defendant owns and/or operates a physical place of public accommodation at 104 Plainview St Eagle Lake MN 56024, and the Internet website http://www.eaglelakedentistry.com constitutes a service, privilege, advantage, or accommodation of such physical place of public accommodation.

42.     Under the general prohibitions established by the MHRA, Minn. Stat. 363A.11, Subd. 2, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

43.     Under the specific prohibitions established by the MHRA, Minn. Stat. 363A.11, Subd. 3, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to afford the goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations; [and]

> [A] failure to take all necessary steps to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered and would result in an undue burden

44.     Defendant has engaged in an unfair discriminatory practice against Plaintiff and others in that it has failed to make http://www.eaglelakedentistry.com fully accessible to persons with disabilities on a full and equal basis. The acts herein

constitute violations of the MHRA, 363A.11. Plaintiff has been denied full and equal access to http://www.eaglelakedentistry.com, has not been provided services that are equal to the services provided to other users who do not have disabilities, and/or has been provided services that are inferior to the services provided to other users who do not have disabilities.

45.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct, despite having been on notice of the fact that its website contained accessibility barriers since at least August 15, 2013. These violations are ongoing.

46.     Plaintiff specifically plans to access http://www.eaglelakedentistry.com again in the immediate future, both in her personal capacity to attempt to enjoy the website and its features, and in her capacity as a "tester." Plaintiff reasonably anticipates that she will continue to suffer irreparable harm upon her planned future access of http://www.eaglelakedentistry.com, unless and until Defendant is required to remove the barriers to access that exist at its website, including those set forth specifically herein.

47.     This Court has authority under Minn. Stat. 363A.33, Subd. 6, and Minn. Stat. 363A.29, Subd. 3–4, to issue an order directing Defendant to cease and desist from its unfair discriminatory practices and to take affirmative action to make its website readily accessible to and independently usable by individuals with disabilities. The Court furthermore has authority under these statutory provisions of the MHRA to order Defendant to pay a civil penalty to the state and to pay damages to Plaintiff.

48.     Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees from Defendant as part of the costs, pursuant to Minn. Stat. 363A.33, Subd. 7.

**WHEREFORE**, Plaintiff respectfully requests:

a. That the Court issue a Declaration that Defendant is owning, maintaining, and/or operating http://www.eaglelakedentistry.com in a manner which discriminates against persons with visual impairments and which fails to provide access for persons with disabilities as required by law;

b. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a), Minn. Stat. 363A.33, Subd. 6, and Minn. Stat. 363A.29, Subd. 3, enjoining Defendant from continuing its discriminatory practices; including an order directing Defendant to make all readily achievable alterations to its website so as to remove barriers to access and make its website fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA and the MHRA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis;

c. That the Court order Defendant to pay a civil penalty to the state pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4.

d. That the Court award Plaintiff damages, to be paid by Defendant pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A. 29, Subd. 4.

e. That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28

C.F.R. § 36.505, and Minn. Stat. 363A.33, Subd. 7, or as otherwise provided by law; and

f.  That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA or the MHRA.


DATED: 10/4/13                     Respectfully submitted,


Paul R. Hansmeier (MN Bar # 387795)
CLASS JUSTICE PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
E-mail: mail@classjustice.org
Phone: (612) 234-5744

## ACKNOWLEDGMENT

Pursuant to Minn. Stat. § 549.211, the undersigned hereby acknowledges that monetary and other sanctions may be imposed for presenting a position to the Court that is unwarranted or for an improper purpose, as more fully defined in that statute.

DATED: 10/4/13

By: _____

Paul R. Hansmeier (MN Bar #387795)

- 20 -