UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lily Poss,

Plaintiff,

v.

Eagle Lake Family Dentistry, P.A.,

Defendant.

Court File No. ____________

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## INTRODUCTION

In this lawsuit, Plaintiff Lily Poss sues Eagle Lake Family Dentistry, P.A. ("Eagle Lake"), a small dental clinic in Eagle Lake, MN, for alleged violations of Title III of the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). In her Complaint, Plaintiff does not allege that she desires to or ever attempted to utilize Eagle Lake's goods and services (*e.g.*, teeth cleaning, cavity filling, etc...), but rather that she is unable to experience "full and equal enjoyment" of Eagle Lake's website, www.eaglelakedentistry.com, as a result of a visual impairment. Plaintiff does not allege that she attempted to utilize any equally accessible alternatives, such as calling Eagle Lake or going there in person. Because the harm that Plaintiff alleges is purely hypothetical and does not establish that Plaintiff is unable to access Eagle Lake's goods or services, Plaintiff lacks standing for this lawsuit. Moreover, because the claims asserted in the Complaint do not amount to a violation of the ADA, her Complaint fails to

state a claim for which relief can be granted. Eagle Lake respectfully requests that this Court dismiss Plaintiff's claims.

## PROCEDURAL BACKGROUND

### I. PLAINTIFF'S PRIMARY ALLEGED HARM IS THAT SHE IS UNABLE TO "ENJOY" EAGLE LAKE'S WEBSITE.

In her Complaint, Plaintiff alleges that she suffers from "legal blindness" and uses screen-reading software to access the Internet. (Complaint, at ¶ 10). Plaintiff alleges that, as a person with a disability, "she has a personal interest in having full and equal access to publically-accessible Internet websites." (*Id.*). She also alleges that she is a "tester," who "visits Internet websites in order to determine whether they are accessible by persons with visual impairments like herself." (*Id.*, at ¶ 11).

Plaintiff asserts that in September 2013, she visited Eagle Lake's website, www.eaglelakedentistry.com, "for the purpose of taking advantage of the opportunities, features, benefits, privileges and advantages provided to the public through the website." (Complaint, at ¶ 17). Plaintiff claims that she was "unable to fully utilize the website, due to Defendant's use of inaccessible web design features." (*Id.*, at ¶ 18). She further alleges that she "intends to access the website . . . again in the near future, both to attempt to enjoy the opportunities, features, benefits, privileges and advantages provided therein, and to ascertain whether the website remains inaccessible to persons with visual impairments." (*Id.*, at ¶ 24).

## II. PLAINTIFF'S COMPLAINT DOES NOT ALLEGE THAT EAGLE LAKE'S WEBSITE PREVENTED HER FROM UTILIZING EAGLE LAKE'S GOODS AND SERVICES.

Plaintiff's Complaint identifies three alleged problems with Eagle Lake's website. However, Plaintiff does not allege that these alleged problems prevented her from utilizing Eagle Lake's goods and services. Nor does she allege that she attempted any equally accessible alternatives to access Eagle Lake's good and services.

First, Plaintiff alleges that:

> Images of text are used instead of standard text, making it difficult or impossible for persons with impaired vision to read, either with or without the aid of magnification or screen-reading software. For example, the website offers a "get acquainted offer" of $50 off any dental service for new patients, at http://www.eaglelakedentistry.com/special-offers-/, which is not visible to persons who use screen-reading software like Plaintiff.

(Complaint, at ¶ 25(a)). Plaintiff does not allege that she wanted to use any of the services of Eagle Lake, much less the "get acquainted offer" coupon referenced in the Complaint. Nor does she allege that she attempted any equally accessible alternatives, such as calling the dental office to ask about prices or offers. (*See generally* Complaint).

Second, Plaintiff alleges that:

> The website uses visually-based, "Captcha"-style challenge response tests to determine if users are humans, making it difficult or impossible for persons with visual impairments to fully use certain features of the site.

(Complaint, at ¶ 25(b)). The only "Captcha"-style challenge on Eagle Lake's website is for a feature that allows a user to send a message to Eagle Lake to request an

appointment.[1] The screen for this site states: "We encourage you to contact us via phone or email." The screen goes on to offer a message alternative as follows: "Please provide your contact information below and we will contact you soon to schedule an appointment"[2] and, like many sites, includes a Captcha validation box. Plaintiff does not allege that she wanted to or attempted to request an appointment with Eagle Lake using this feature of the website, nor does she allege that she attempted any equally accessible alternatives, such as calling the dental office to request an appointment. (*See generally* Complaint).

Third, Plaintiff alleges that:

> Important pictures on the website lack alternative text ("alt-text") descriptions, making it difficult or impossible for someone using screen-reading software to interpret the picture content.

(Complaint, at ¶ 25(c)). However, Plaintiff does not assert that the alleged lack of alternative text prevented her from accessing Eagle Lake's goods and services in any meaningful way, such as preventing her from understanding what goods and services Eagle Lake offers or scheduling an appointment with Eagle Lake. (*See generally* Complaint).

---

[1] *See* http://www.eaglelakedentistry.com/contact_information/ (last visited October 28, 2013).

[2] *Id.*

## ARGUMENT

### I. STANDARD OF REVIEW.

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*; *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

When reviewing a motion to dismiss, a court may consider the Complaint as well as other materials "necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Stahl v. U.S. Dept. of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

### II. PLAINTIFF LACKS STANDING UNDER ARTICLE III OF THE U.S. CONSTITUTION.

#### A. To Establish Standing under Title III of the ADA, The Plaintiff Must Allege an "Injury-In-Fact."

Federal jurisdiction is limited by Art. III, § 2, of the U.S. Constitution to include only actual "Case" and "Controversies." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000). A plaintiff's standing to sue "is the threshold question in every federal case,

determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an "injury-in-fact;" (2) a causal relationship between the injury and the challenged conduct; and (3) that the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*, at 561.

To demonstrate an "injury-in-fact," a plaintiff must allege a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61. The plaintiff must show that he or she "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate . . . ." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Both Title III of the ADA and the MHRA prohibit discrimination against persons with disabilities in places of public accommodation. *See* 42 U.S.C. § 12182; Minn. Stat. § 363A.11. In order to establish standing under these statutes, however, a plaintiff must at least prove knowledge of barriers to equal access by the disabled and that he or she would visit the place of public accommodation in the imminent future but for those barriers. *Steger*, 228 F.3d at 892. Under this standard, intent to return to the place of injury "some day" is insufficient. *Id.*, at 893 (citing *Lujan*, 504 U.S. at 564).

**B. Plaintiff Cannot Establish Standing Because She Has Never Patronized Eagle Lake and Alleges No Definite Plans To Do So.**

To analyze the likelihood that a plaintiff will return to a place of public accommodation for purposes of standing under Title III of the ADA, courts have developed a four-factor test, which considers: (1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definitiveness of the plaintiff's plans to return; and (4) the plaintiff's frequency of travel near defendant. *Kramer v. Midamco*, 656 F.Supp.2d 740, 747–48 (N.D. Ohio 2009); *see also Brown v. Grand Island Mall Holdings, Ltd.*, No. 4:09-cv-3086, 2010 WL 489531, at *3 (D. Neb., Feb. 8, 2010).[3]

Plaintiff's Complaint falls far short of satisfying this four-factor test. Plaintiff's Complaint clearly fails with respect to elements 2 and 3 of the four-factor test: past patronage of the defendant's business and the definitiveness of plaintiff's plans to return.

With respect to past patronage, Plaintiff alleges no patronage of Eagle Lake's business or any attempt to actually use its services. (*See generally* Complaint). Instead, she alleges only that she visited Eagle Lake's website a single time. (Complaint, at ¶ 17). Plaintiff's solitary visit to Eagle Lake's website is insufficient to create standing. When a plaintiff visits a place of public accommodation "only once," courts have held that "the lack of history of past patronage seems to negate the possibility of future injury at [that] particular location." *Brown*, 2010 WL 489531, at *4 (citing *Disabled Patriots of America, Inc. v. City of Trenton*, No. 07-CV-3165(FLW), 2008 WL 4416459, at *5

[3] All unpublished opinions cited in this brief are attached as Exs. 1–9 to the Declaration of Michael Wilhelm.

(D.N.J., Sep. 24, 2008)); *see also Anderson v. Macy's Inc.*, --- F.Supp.2d ---, No. 2:12-CV-556, 2013 WL 1857535, at *6 (W.D. Pa., May 2, 2013) (holding that "one-off" visits to Macy's stores are insufficient to establish standing); *Harty v. Luihn Four, Inc.*, 747 F.Supp.2d 547, 552 (E.D. N.C. 2010) (holding that a disabled restaurant patron who encountered architectural barriers during a single visit to a restaurant failed to demonstrate intent to return and lacked standing).

With respect to definitiveness of plans to return, Plaintiff does not allege that she ever intends to patronize Eagle Lake's business or attempt to do so in the future. (*See generally id.*). Instead, Plaintiff merely alleges that she intends to return to Eagle Lake's website with no apparent purpose apart from "enjoying" the website itself. (Complaint, at ¶ 24). This assertion lacks plausibility on its face – who "enjoys" a small dental office's website without any intention of going to that dentist? However, even interpreting Plaintiff's alleged desire to return to Eagle Lake's website as sincere, Plaintiff's claim that she intends to visit the website to "enjoy the opportunities, features, benefits, privileges and advantages provided therein" is nothing more than a rote recitation of language from the text of the ADA. *Compare id. with* 42 U.S.C. §12182. This "formulaic recitation" is insufficient under the pleading standard of Rule 12. *Iqbal*, 556 U.S. at 678. Moreover, "a generalized allegation of a desire to return is essentially the equivalent of pleading to return 'some day,'" and is insufficient to establish standing. *Anderson*, 2013 WL 1857535, at *6; *see also Steger*, 228 F.3d at 893 (citing *Lujan*, 504 U.S. at 564).

As to proximity, the Complaint alleges only that Plaintiff is a "resident of the State of Minnesota," but does not specify where she lives or that she travels near Eagle Lake's dental offices. (Complaint, at ¶ 9). Even assuming that Plaintiff resides near Eagle Lake, her proximity alone would not suffice to establish standing. Courts have held that it cannot be assumed that just because a plaintiff lives nearby, he or she would likely return in the imminent future. *Brown*, 2010 WL 489531, at *4.

An ADA plaintiff "cannot manufacture standing to sue in a federal court by simply claiming that [s]he intends to return to the Facility." *Kramer*, 656 F.Supp.2d at 747–48. Because Plaintiff has never used or even sought to use Eagle Lake's dental services before and does not allege any concrete plans to do so in the future, she cannot credibly allege that she is "among the injured," which is an essential requirement for standing under Title III of the ADA. *Steger*, 228 F.3d at 893. Plaintiff's claims must be dismissed for lack of standing.

### C. Plaintiff Cannot Establish That The Alleged Inaccessibility of Eagle Lake's Website Caused Any Injury to Her.

Plaintiff's Complaint also fails to establish standing under Title III of the ADA because Plaintiff does not assert that the alleged inaccessibility of Eagle Lake's website resulted in any harm to her. When an ADA violation does not actually cause injury to a plaintiff, the plaintiff lacks standing. *See Freezor v. Patterson*, 896 F.Supp.2d 895, 901–902 (E.D. Cal. 2012) (holding that the plaintiff lacked standing when it was undisputed that plaintiff was able to visit the store and use its dressing rooms despite technical violations of ADA); *see also Todd v. D&D Foods, Inc.*, No. 4:09CV00336 JLH, 2010

WL 1729968, at *3 (E.D. Ark., Apr. 28, 2010) (dismissing plaintiff's ADA claim when there was no evidence that the faulty design of a curb ramp caused the plaintiff's alleged injury).

Here, Plaintiff does not allege that she was unable to utilize the goods and services offered by Eagle Lake, such as requesting an appointment, because of the alleged inaccessibility of Eagle Lake's website. Indeed, Plaintiff does not allege that she wanted or attempted to utilize any of the goods and services offered by Eagle Lake. (*See generally* Complaint). Absent any actual injury to Plaintiff, she lacks standing to seek redress for alleged technical violations of the ADA. *Freezor*, 896 F.Supp.2d at 901–02.

**D. Plaintiff's Assertion That She Is A Tester Is Insufficient To Establish Standing.**

Plaintiff's assertion that she is a tester is also insufficient to give rise to standing under Article III. Courts refuse to hold that a plaintiff has standing when the plaintiff merely alleges that he or she is a "tester" and fails to otherwise establish individual standing. *See Kramer*, 656 F.Supp.2d at 747–48 (holding that "a plaintiff's claim that she visited the facility as a tester and intends to visit the Facility to verify its compliance . . . does little to support [her] allegation that [s]he is truly threatened by an immediate future injury"); *Norkunas v. Park Rd. Shopping Ctr., Inc.*, 777 F. Supp. 2d 998, 1005 (W.D.N.C. 2011), *aff'd*, 474 F. App'x 369 (4th Cir. 2012) ("[T]he naked assertion of a desire to return to a defendant establishment for the sole purpose of confirming ADA-compliance, without more, is insufficient to establish standing."); *Brown*, 2010 WL 489531 at *4 n.6 ("Brown's 'tester' status does not relieve her of the obligation to prove in this case that she

will return to the Grand Island Mall once the alleged barriers to access are removed."); *Harris v. Stonecrest Care Auto Ctr., LLC*, 472 F. Supp. 2d 1208, 1219 (S.D. Cal. 2007) ("A plaintiff who visits a local business solely in order to bring a Title III claim . . . fails to meet the redressability requirement for Article III standing."); *Access for the Disabled, Inc. v. Rosof*, No. 805-cv-1413T30TBM, 2005 WL 3556046, at *2 (M.D. Fla., Dec. 28, 2005) (holding that plaintiff's status as a tester "does little to support his allegation that he is truly threatened by an immediate future injury").

The harm alleged in Plaintiff's Complaint is manufactured. Plaintiff makes no allegation that she has ever been a patient of Eagle Lake's dental office, nor does she allege that she intends or even desires to be a patient of Eagle Lake in the future. Plaintiff merely alleges that she wants Eagle Lake's website to be accessible for the sake of accessibility. This is precisely the kind of "hypothetical" and "conjectural" claim that is insufficient to establish standing under Article III of the U.S. Constitution. *Lujan*, 504 U.S. at 560–61. Because there is no "concrete and particularized" harm alleged in Plaintiff's Complaint, Plaintiff lacks standing and this Court lacks subject matter jurisdiction over Plaintiff's claims. Therefore, the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(1).

## III. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

### A. Eagle Lake's Website Is Compliant With The Minimal Guidance Provided by the Department of Justice For Private Websites Under Title III of the ADA.

In addition to not establishing standing, Plaintiff's Complaint does not state a plausible claim to believe that Eagle Lake violated Title III of the ADA. The law concerning the application of the ADA to various types of websites is still being developed, and what little guidance the Department of Justice ("DOJ") has offered demonstrates that the issues identified in Plaintiff's Complaint do not establish that Eagle Lake's website violated the ADA.

Title III of the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of the "goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation…" 42 U.S.C. § 12182(a). The overwhelming focus of Title III of the ADA is on physical places of accommodation and barriers of an architectural nature. *See generally* 42 U.S.C. § 12181 *et seq.* All twelve examples of places of public accommodation enumerated in 42 U.S.C. § 12181(7) are physical structures, such as hotels, restaurants, or stadiums. In addition, the DOJ's regulations define the term "place of public accommodation" to mean a "facility" operated by a private entity and further define "facility" in purely physical terms as:

> [A]ll or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located.

28 C.F.R. § 36.104.

While there are extensive regulations on numerous other aspects of the ADA, as of today's date, the DOJ has issued no regulations determining whether a private website is a "place" of public accommodation; whether a website itself is a "good" or "service" of a "place" of public accommodation; or whether a website that primarily advertises or describes a good or service that cannot be offered online (unlike online services such as iTunes or Netflix) is itself a "good" or "service." Nor has the U.S. Congress adopted legislation addressing this issue. Importantly, the Web Content Accessibility Guidelines, Version 2.0 ("WCAG 2.0") referenced in Plaintiff's Complaint do not have the force of law with respect to private websites under the ADA. (*See* Complaint, at ¶ 22).

The DOJ did, however, publish an Advanced Notice of Proposed Rulemaking in 2010 addressing the accessibility of websites under Title III of the ADA. *See* Advanced Notice of Proposed Rulemaking - Accessibility of Web Information and Services Provided by Entities Covered by the ADA, CRT Docket No. 110 (hereinafter "Advanced Notice").[4] In the Advanced Notice, the DOJ indicated that a website, like the one operated by Eagle Lake, would be compliant with the ADA for at least two reasons.

1. *Eagle Lake's Website Does Not Offer "The Goods or Services of a Public Accommodation Online."*

The DOJ's Advanced Notice states that Title III the ADA does not apply to the entire Internet, but rather only to the websites of places of public accommodation that offer their goods and service online. Specifically, the DOJ wrote that:

---

[4] Available at http://www.ada.gov/anprm2010/web%20anprm_2010.htm (last visited October 28, 2013).

> It is the Department's intention to regulate only governmental entities and public accommodations covered by the ADA that provide goods, services, programs, or activities to the public via websites on the Internet. Although some litigants have asserted that "the Internet" itself should be considered a place of public accommodation, the Department does not address this issue here. The Department believes that Title III reaches the websites of entities that provide goods or services that fall within the 12 categories of "public accommodations," as defined by the statute and regulations.
>
> . . . As long as these business entities offer the goods or services of a public accommodation online, they would be responsible for making such offerings accessible to individuals with disabilities.

*See* Advanced Notice, at § IV(B) (emphasis added).

Here, Eagle Lake does not and cannot offer its dental services online. Accordingly, Eagle Lake's website will not qualify as a website which must be accessible if or when the DOJ issues regulations governing websites under the ADA.

2. *The Information on Eagle Lake's Website Is Available To Plaintiff Through Alternative Means.*

The DOJ's Advanced Notice further states that places of public accommodation may comply with Title III of the ADA by providing equally accessible alternatives to their website offerings:

> The Department has taken the position that covered entities with inaccessible websites may comply with the ADA's requirement for access by providing an accessible alternative, such as a staffed telephone line, for individuals to access the information, goods, and services of their website.

*See* Advanced Notice, at § IV(C).

Here, Plaintiff's Complaint does not allege that she attempted any equally accessible alternatives, such as calling Eagle Lake or going to its offices to inquire about

their services, nor does she allege that Eagle Lake does not make such equally accessible alternatives available. (*See generally* Complaint). Rather, Plaintiff's Complaint appears to rely on the inaccurate assumption that a website itself must be accessible under all circumstances. Even the DOJ does not advocate for such a bright-line rule. In light of the DOJ's guidance on this issue, Plaintiff's Complaint does not establish a plausible claim for relief under the ADA because she does not allege that the information on Eagle Lake's website is unavailable through equally accessible alternatives.

**B. Plaintiff's Complaint Does Not Allege A Sufficient Nexus Between Eagle Lake's Website and the Dental Services Offered at Eagle Lake's Physical Location.**

In addition to the minimal guidance provided by the DOJ on this subject, there is currently a circuit split regarding whether a website is subject to Title III of the ADA without a "nexus" to a place of public accommodation. The weight of authority supports the conclusion that Plaintiff should be required to plead a nexus between the alleged inaccessibility of Eagle Lake's website and the dental services offered in Eagle Lake's physical offices. Plaintiff's failure to plead such a nexus provides another reason for dismissing her Complaint.

1. *Courts Are Split Regarding Whether a Plaintiff Must Plead a Nexus Between a Website and a Physical Place of Public Accommodation.*

While the Eighth Circuit has not addressed this issue, the majority of courts that have addressed the issue hold that Title III of the ADA applies only when there is a nexus between a challenged service offered over the Internet and a physical place of public accommodation. These courts hold that the ADA does not apply to websites standing

alone, but may apply to the extent that the website impedes the full enjoyment of a physical place of public accommodation. *See Nat'l Federation of the Blind v. Target Corp.*, 452 F.Supp.2d 946, 956 (N.D. Cal. 2006) (holding that "[t]o the extent that Target.com offers information and services unconnected to Target stores, which do not affect the enjoyment of goods and services offered in Target stores, the plaintiffs fail to state a claim under Title III of the ADA") (citing *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000)); *Young v. Facebook, Inc.*, 790 F.Supp.2d 1110, 1115–16 (N.D. Cal. 2011) (holding that Facebook was not a place of public accommodation under the ADA); *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023–24 (N.D. Cal. 2012) (holding that Netflix was not a place of public accommodation under the ADA); *Access Now, Inc. v. Southwest Airlines, Co.*, 227 F.Supp.2d 1312, 1317–19 (S.D. Fl. 2002) (holding that the website for Southwest Airlines was not a place of public accommodation under the ADA), *aff'd*, 385 F.3d 1324 (11th Cir. 2004).

In contrast, a minority of courts hold that services offered by places of public accommodation online are subject to the accessibility requirements of ADA regardless of whether a nexus exists between the services and a physical structure. *See Nat'l Ass'n of the Deaf v. Netflix*, 869 F.Supp.2d 196, 200–202 (D. Mass. 2012) (holding that Netflix is a place of public accommodation under the ADA).

A similar split among courts exists in which some courts hold that there must be a nexus between other off-site goods and services, like insurance policies, and physical places of public accommodation in order to invoke coverage under Title III of the ADA. *See Rendon v. Valleycrest Prod., Ltd.*, 294 F.3d 1279, 1280–81 (11th Cir. 2002) (holding

that a sufficient nexus existed between a telephone process for selecting game show contestants and the physical TV studio for Title III of the ADA to apply); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612–13 (3d Cir. 1998) (holding that Plaintiff failed to allege a nexus between the place of public accommodation and insurance benefits offered by an employer); *Stoutenborough v. National Football League*, 59 F.3d 580, 583–84 (6th Cir. 1995) (dismissing Title III claim because the live telecast of a football game was not offered by the place of public accommodation, the stadium).

Alternatively, some courts hold that intangible good and services, such as insurance policies, are subject to Title III of the ADA without a nexus to a physical structure. *See Carparts Distrib. Ctr. V. Auto. Wholesaler Assoc.*, 37 F.3d 12, 19 (1st Cir. 1994) (holding that an insurance company was subject to Title III of the ADA without a physical structure); *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (stating in dicta that places of public accommodation encompass both physical and electronic spaces); *Winslow v. IDS Life Ins. Co.*, 29 F.Supp.2d 557, 563 (D. Minn. 1998) (holding that Title III of the ADA is applicable to insurance policies without physical structures).

Despite the existence of this split of authority, both the insurance policy and Netflix situations are distinguishable from the circumstances presented by this case. In both of those situations, the insurance policy or the online entertainment provided is the primary "service" offered and can be delivered without a physical structure. Moreover, as noted in *Winslow*, the ADA's "Safe Harbor" provisions and DOJ interpretations expressly contemplate the application of the ADA to insurance policies. 29 F.Supp.2d at

562–63. In contrast, the dental services offered by Eagle Lake are not intangible and cannot be provided outside a physical place of public accommodation.

2. *Plaintiff Has Failed to Plead That Eagle Lake's Website Impedes Access to the Dental Services Offered by Eagle Lake.*

In this case, Plaintiff does not plead a nexus between the alleged inaccessibility of Eagle Lake's website and the dental services offered in Eagle Lake's physical office. Therefore, this case is not like the *Target Corp.* case, where the plaintiffs stated a claim under the ADA to the extent they alleged that "the inaccessibility of Target.com denies the blind the ability to enjoy the services of Target stores." 452 F.Supp.2d at 955. Nor is this case like *Rendon*, where the court held that the plaintiffs stated a claim under the ADA by alleging that telephonic procedures "screen[ed] out disabled persons from participation in a competition held in a tangible public accommodation." 294 F.3d at 1282–83.

Because the services offered by Eagle Lake cannot be provided or "enjoyed" online, this case is also unlike those cases where no nexus to a physical place of public accommodation has been required. *See, e.g.*, *Netflix*, 869 F.Supp.2d at 200–02; *Winslow*, 29 F.Supp.2d at 563. Eagle Lake is not in the business of providing intangible goods or services to the public, such as insurance policies or online entertainment. Accordingly, any alleged accessibility issues with Eagle Lake's website do not hinder access to its dental services, nor does Plaintiff's Complaint plead such a hindrance to Eagle Lake's dental services.

Requiring Plaintiff to plead a nexus between the alleged inaccessibility of aspects of Eagle Lake's website and the enjoyment of services provided in its physical office in order to state a claim under the ADA is consistent with the position taken by the majority of courts that have addressed this issue. It is also consistent with the DOJ's position that websites operated by places of public accommodation are subject to Title III of the ADA only to the extent that they "offer the goods or services of a public accommodation online." *See* Advanced Notice, at § IV(B).

Plaintiff's Complaint does not allege a plausible nexus between the alleged accessibility barriers that she confronted on Eagle Lake's website and the availability of dental services in Eagle Lake's office. (*See generally* Complaint). Plaintiff alleges no interest in obtaining the dental services offered at Eagle Lake's physical office. Instead, Plaintiff focuses her Complaint on her alleged inability to access Eagle Lake's website for the sake of enjoying the website alone. (*See generally id.*). Because Plaintiff's Complaint does not allege a nexus between Eagle Lake's website and her ability to utilize the dental services offered by Eagle Lake, this Court should dismiss the Complaint for failure to state a claim upon which relief can be granted.

## IV. <u>THIS COURT SHOULD AWARD ATTORNEYS' FEES TO EAGLE LAKE.</u>

Under the ADA, attorney's fees are available to a prevailing defendant. 41 U.S.C. § 12205; *see also Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 605 (2001). A prevailing defendant is entitled to attorney's fees where the plaintiff's claim is unreasonable or where the plaintiff continued to litigate

after his claim became groundless. *See, e.g.*, *E.E.O.C. v. Hibbing Taconite Co.*, 740 F. Supp. 1052, 1054 (D. Minn. 2010).

Here, Plaintiff does not allege that she ever patronized Eagle Lake and she alleges no intention to do so in the future. Plaintiff lacks standing, and her Complaint fails to state a claim for relief upon which relief can be granted. If Plaintiff's Complaint is dismissed, Eagle Lake will be the prevailing party and entitled to an award of attorneys' fees under the ADA.

Moreover, an award of attorneys' fees to Eagle Lake is appropriate because this lawsuit appears to be consistent with "shakedown" litigation tactics that are unfortunately common under Title III of the ADA. For example, in *Molski v. Mandarin Touch Restaurant*, the Central District of California issued sanctions against an ADA litigant who demanded settlement payments for alleged minor violations of the ADA on a widespread and systematic basis. 347 F.Supp.2d 860 (C.D. Cal. 2004). The court described these tactics as follows:

> The abuse is a kind of legal shakedown scheme: Attorneys form a front "watchdog" or "consumer" organization. They scour public records on the Internet for what are often ridiculously minor violations of some regulation or law by a small business, and sue that business in the name of the front organization. Since even frivolous lawsuits can have economic nuisance value, the attorneys then contact the business (often owned by immigrants for whom English is a second language), and point out that a quick settlement (usually around a few thousand dollars) would be in the business's long-term interest.

*Id.*, at 867–68 (citing *People ex rel. Lockyer v. Brar*, 115 Cal.App.4th 1315, 1316–17, 9 Cal.Rptr.3d 844 (2004)).

This type of scheme is not designed for the purpose of advancing the legitimate interests protected by Title III of the ADA, but rather for the purpose of generating attorneys' fees. Indeed, in *Molski*, the court wrote that these "shotgun litigation" tactics undermined "both the spirit and purpose of the ADA." *Id.*, at 867.

In this case, the absence of any allegations that Plaintiff intends to patronize Eagle Lake's dental office or suffered any real injury from Eagle Lake's allegedly inaccessible website strongly suggest that the redress of an injury under the ADA may not be the true reason for this lawsuit.[5]

This lawsuit does not assert claims of a plaintiff who has suffered or will suffer harm or injury because of Eagle Lake's actions. Instead, this lawsuit appears designed to procure a benefit for Plaintiff's counsel. That is not a legitimate purpose for litigation under the ADA. Accordingly, this Court should require Plaintiff's counsel to pay Eagle Lake's attorneys' fees both as the prevailing party in this litigation and pursuant to the Court's inherent power. *See Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d

---

[5] Notably, Plaintiff's counsel, Paul Hansmeier, has been sanctioned by numerous courts for similar tactics designed to generate settlement payouts. *See Ingenuity 13 LLC v. John Doe*, No. 2:12-cv-08333-ODW-JC, at 10 (C.D. Cal., May 6, 2013) (sanctioning Plaintiff's counsel for "brazen misconduct and relentless fraud" and referring Plaintiff's counsel for investigation by the U.S. Attorney's office and the I.R.S.); *AF Holdings, LLC v. Navasca*, No. 3:12-cv-02396, at 15 (N.D. Cal., Oct. 16, 2013) (ordering Plaintiff's counsel to show cause why he should not be added as a debtor to an attorneys' fee award and sanctioned by the court); *Shames et al. v. The Hertz Corp.*, No. 3:07-c-v-02174-MMA-WMC, at 5 (S.D. Cal., Oct. 15, 2012) (discussing Plaintiff's counsel's improper demand for payment of $30,000.00 in exchange for not filing objections to a class settlement); *Guava LLC v. Spencer Merkel*, No. 27-CV-12-20976, at 11 (Henn. Cty. Dist. Ct., Aug. 30, 2013) (sanctioning Plaintiff's counsel's former firm, Alpha Law Firm LLC, for acting "in bad faith and without a basis in law and fact"). *See* Declaration of Michael Wilhelm, at Exs. 6–9.

794, 807 (8th Cir. 2005) (holding that it was not "an abuse of discretion for the district court to invoke its inherent power to impose a monetary sanction" against plaintiffs' attorneys for misconduct).

## CONCLUSION

This lawsuit does not present a true "Case" or "Controversy" under Article III of the U.S. Constitution, nor does it plead a plausible factual basis to establish that Eagle Lake's website violated Title III of the ADA. Eagle Lake respectfully requests that this Court dismiss Plaintiff's Claims for lack of standing and failure to state a claim upon which relief can be granted and award Eagle Lake its reasonable attorneys' fees and costs as the prevailing party under the ADA.

Dated: October 28, 2013

**BRIGGS AND MORGAN, P.A.**

By: s/Sally A. Scoggin
John M. Degnan (#21817)
Sally A. Scoggin (#98358)
Michael C. Wilhelm (#387655)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2157
(612) 977-8400